# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JACK A. MURPHY, | |
| Plaintiff, | No. 18-CV-2037-CJW-KEM |
| vs. | |
| ANDREW SAUL, Commissioner of Social Security, | **ORDER** |
| Defendant. | |

Claimant Jack A. Murphy ("claimant") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 (the "Act"), and for supplemental security income under Title XVI, 42 U.S.C. §§ 1381-83f of the Act. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled. For the following reasons, the Court **affirms** the Commissioner's decision.

## I.  PROCEDURAL BACKGROUND

On July 4, 2015, claimant filed an application for disability and disability benefits and an application for supplemental security income, alleging an onset date of October 12, 2012. (Doc. 11, at 2; AR 13).[1] On August 26, 2015, the Social Security Administration denied claimant's application and on December 3, 2015, affirmed the denial on reconsideration. (AR 141-44, 149-57). On December 17, 2015, claimant

---

[1] The Court adopts the facts as set forth in the parties' Joint Statement of Facts (Doc. 11), unless otherwise noted, and therefore will only summarize the pertinent facts here.

requested a hearing before an ALJ. (AR 13). On August 7, 2017, ALJ Robert Kelly held a hearing on claimant's application. (*Id.*). On October 19, 2017, the ALJ denied claimant's application. (AR 13-22). On April 20, 2018, the Appeals Council upheld the ALJ's decision. (AR 1-6).

On June 21, 2018, claimant filed his complaint in this Court. (Doc. 4). Between December 2018 and February 2019, the parties filed briefs on the merits of the case. (Docs. 12-14). On February 11, 2019, the Court deemed this case fully submitted and ready for decision. (Doc. 15). On the same day, the Court referred the case to a United States Magistrate Judge for a Report and Recommendation. On July 10, 2019, the Court un-referred the case.

## II.  *DISABILITY DETERMINATIONS AND BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the

regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4)(i). "Substantial" work activity involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. *Id.* § 416.972(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707 (citations omitted).

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id. See also* 20 C.F.R. §§ 404.1522, 416.922.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the

claimant's residual functional capacity ("RFC") and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is not disabled. *Id*. Past relevant work is any work the claimant performed within the fifteen years before the application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. *See* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). The claimant is responsible for providing the evidence the Commissioner will use to determine his RFC, but the Commissioner is responsible for developing the record. *Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004); 20 C.F.R. § 404.1545(a)(3). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Eichelberger*, 390 F.3d at 591.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591; *see also* 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before determining the existence of a disability.

Although the ALJ has the duty to develop the factual record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *Eichelberger*, 390 F.3d at 592.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since October 12, 2012. (AR 16).

At Step Two, the ALJ found that claimant had the severe impairments of "major joint dysfunction (bilateral knees), asthma, obesity." (*Id.*).

At Step Three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled a presumptively disabling impairment listed in the relevant regulations. (*Id.*).

At Step Four, the ALJ found that claimant had the residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand/walk for up to 6 hours in an 8-hour workday; can sit for up to 6 hours in an 8-hour workday; avoid uneven or non-paved ground; never kneel, crawl or climb ladders, ropes or scaffolds; only occasionally balance, stoop, crouch and climb ramps/stairs; no concentrated exposure to hazards or to respiratory/pulmonary irritants such as dust or fumes.

(AR 16-20). Also at Step Four, the ALJ found that claimant could not perform any past relevant work. (AR 20-21).

At Step Five, the ALJ found that given claimant's age (49 years-old), high school education, work experience, and his residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could perform. (AR 21-22).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citation and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citation and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . .[ ] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (citation omitted). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at

555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases when the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984) (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted)).

## V. DISCUSSION

Claimant argues that the ALJ erred in (1) determining claimant's RFC because it was not supported by some medical evidence; and (2) finding claimant's pseudoseizures and migraines were not severe impairments. (Doc. 12, at 3-8). Claimant also argues that the ALJ was not appointed in a constitutional manner and demands remand for the case to be decided by a properly appointed ALJ. (Doc. 12, at 8-20). The Court will address each of claimant's contentions in turn.

### A. *Claimant's RFC*

Claimant asserts that the ALJ erred in determining claimant's RFC. Claimant first argues that he turned fifty years old shortly before he was denied benefits and had the ALJ accepted the medical consultants' opinions that claimant was limited to sedentary work, claimant would have been found disabled. (Doc. 12, at 3-4). Claimant further

argues that the ALJ failed to "provide good reasons for the weight afforded to the medical opinion evidence . . . by failing to cite to any specific testimony or evidence . . . ." (*Id.*, at 4). Claimant argues that, to the extent the ALJ based his findings on claimant's improvement, the ALJ failed to state when that improvement would have occurred. (*Id.*, at 5). Finally, claimant argues that if the ALJ was going to reject the medical consultants' opinions that claimant was limited to sedentary work, then the ALJ should have ordered a consultative examination. (*Id.*, at 5-6). Ultimately, claimant accuses the ALJ of playing doctor. (*Id.*, at 6).

"It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions." *Brown v. Berryhill*, No. C16-0179-LTS, 2018 WL 1001022, at *9 (N.D. Iowa Feb. 21, 2018) (citations omitted). The Court will not reweigh the evidence and will not disturb the weight the ALJ assigned to the opinion evidence simply because substantial evidence would support a contrary outcome. *See Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *7 (N.D. Iowa Sept. 14, 2018) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). If the ALJ's RFC determination is within the "zone of choice" based on the evidence in the record, the court will affirm the ALJ's decision. *Brown*, 2018 WL 1001022, at *9 (quoting *Culbertson*, 30 F.3d at 939). In evaluating medical opinions, the ALJ will give controlling weight to the opinion of a treating source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).[2]

---

[2] New regulations for evaluating medical opinions went into effect on March 27, 2017, and some, by their terms, apply retroactively. *See* REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844 (Jan. 18, 2017). These new rules are substantively the same as the old rules, and the Eighth Circuit Court of Appeals has applied them retroactively. *See, e.g.*, *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). Unless otherwise noted, for regulations regarding opinion evidence the Court will refer to the regulations that became effective on March 27, 2017.

In the absence of an opinion from a treating source that is entitled to controlling weight, the ALJ must consider several factors in determining the weight to give to the various medical opinions, including the examining or treatment relationship a medical source has with the claimant, how well the opinion is supported by evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(c). In assessing medical opinions, the ALJ need not explicitly discuss each factor, as long as the ALJ considers the factors set forth in the regulations. *See Molnar v. Colvin*, No. 412-CV-1228-SPM, 2013 WL 3929645, at *2 (E.D. Mo. July 29, 2013); 20 C.F.R. § 404.1527(c). Although the opinion of a non-examining source alone generally does not constitute substantial evidence, the opinion of a non-examining source may outweigh the opinion of a treating or examining source when the non-examining source's opinions are better supported or are more consistent with the record as a whole. *See Epting v. Berryhill*, No. 16-CV-3118-LTS, 2017 WL 4836311, at *6 (N.D. Iowa Oct. 25, 2017) (citing *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003); 20 C.F.R. § 404.1527(f)(1)). "Inconsistencies with other evidence in the record, including other doctors' opinions is sufficient for discounting a medical source opinion." *Stearns*, 2018 WL 4380984, at *7 (citing *Goff*, 421 F.3d at 790-91). "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted).

Here, the ALJ did not accept consultative reviewing physicians' opinions about claimant. In August 2015, Dennis Weis, M.D., a consultative reviewing physician, opined that claimant could stand or walk for only two hours a day and sit for up to six hours a day. (AR 123-24). In December 2015, another consultative review physician, Laura Griffith, D.O., agreed with Dr. Weis. (AR 135-38). In his RFC, the ALJ concluded claimant could stand or walk up to six hours a day and sit up to six hours a

day. (AR 16-17). Both Dr. Weis and Dr. Griffith found that claimant was limited to sedentary work. (AR 127, 139).

In arriving at an RFC, an ALJ is required to consider relevant evidence, which includes but is not limited to medical opinions. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). An ALJ is not required to support the RFC assessment with a specific medical opinion. *Hensley*, 829 F.3d at 932. Although the ALJ found the consultative physicians' opinions "well supported with specific references to medical evidence," he gave their opinions "limited weight." (AR 20). The ALJ explained that his RFC varied from their opinion regarding the sedentary work capability because of "new evidence now in the record (including testimony) that was not available to those consultants." (*Id.*). Specifically, the ALJ noted that in a July and August 2015 follow up appointment after knee replacements, claimant had a "normal evaluation" and reported "no pain." (AR 19). The ALJ also referenced "[a] July 2016 examination noted full range of motion of the knees and good x-rays, which was also consistent with additional annual follow up in 2017." (AR 19 (internal citations to the record omitted)). The ALJ also noted that claimant's "motor and neurological exams remain intact and he is fully ambulatory without assistive device." (AR 19). The ALJ also noted that none of claimant's treating physicians restricted claimant's activities. (AR 20). Finally, the ALJ cited claimant's testimony during the August 2017 hearing, during which claimant "acknowledged he hikes on the trails at Cedar Falls." (AR 18).

The record supports the ALJ's findings. During appointments between March 2015 and November 2016, a treating neurologist repeatedly and consistently recorded normal neurological signs, including normal muscle bulk, tone, strength, and gait. (AR 661-62, 752-53, and 781-82). Examinations in February and May 2016 showed normal neurological signs, including an absence of a resting tremor. (AR 757-58, 762-63). Claimant continued to have normal neurological examinations through the rest of 2016

and into January 2017. (AR 769-70, 774-75, 781-82, 786-87). On August 26, 2015, (after Dr. Weis's August 21, 2015 opinion), claimant's treating knee surgeon found claimant had intact coordination and sensation in all extremities, "ambulates with a fairly normal gait and station," and had no obvious asymmetry or tenderness in his right leg, and claimant reported no pain. (AR 721-22). The surgeon's follow up appointment in February 2017 was similar to those in August 2015 (*id.*) and in July 2016 (AR 764-65), where claimant reported "occasional achiness" in his knees but the surgeon noted that "otherwise [claimant] is doing very well." (AR 789).

There is also substantial evidence in the record for the ALJ to give little weight to claimant's own subjective claims of limitations. (AR 18). Claimant's subjective complaints were inconsistent with the medical records and his treatment history. (AR 20). Although claimant stated he had hand tremors, they were not observed by treating physicians. (AR 106, 662, 753, 758, 762, 770, 774, 786). Claimant's alleged poor balance was likewise not observed by examining physicians. (AR 103, 323-2, 662, 722, 753, 765, 789). Claimant occasionally complained of extreme pain in his knees (AR 764, 788), but on other occasions claimed to have no pain (AR 721-22), and his daily activities were inconsistent with such extreme claims of pain. Indeed, two medical professionals specifically found claimant exaggerated his symptoms, likely for secondary gain. (AR 322, 370-71). There is no indication in the record that the consultative examiners reviewed these reports. (AR 121-25, 132-38).

Claimant ultimately has the burden to show his work capacity. *Pearsall*, 274 F.3d at 1217. An ALJ may discount medical opinions regarding work capacity so long as the ALJ states good reasons and substantial evidence in the record as a whole supports the ALJ's decision. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). Here, the Court finds the ALJ provided a good reason for discounting the consultative medical sources' opinions based on new evidence they did not have available to them. The Court

also finds substantial medical evidence in the record as a whole supports the ALJ's decision. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("[A]n ALJ is . . . 'required to consider at least some supporting evidence from a [medical] professional.'" (third alteration in original) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001))).

Thus, the Court affirms the ALJ's decision to discount the consultative physicians' opinions and determine claimant's RFC assessment.

### B. *Claimant's Pseudoseizures and Migraines*

Claimant argues that the ALJ erred in finding claimant's pseudoseizures and migraines were not severe impairments. Claimant argues that he suffered pseudoseizures and migraine headaches which, although they "varied in their severity at times . . . were consistently causing at least some limitation in functions that need to be accounted for in [claimant's] RFC." (Doc. 12, at 7). Claimant agues that his "headaches produced more than just a mild limitation" on his ability to work and should have been considered severe. (*Id.*).

Once the ALJ concluded at Step Two that plaintiff had "severe" impairments, he then proceeded to evaluate plaintiff's claim through the remaining steps of the sequential evaluation process. (AR 16-22). At Step Two, a claimant must only show "a severe" impairment—that is, one severe impairment—in order to avoid a denial of benefits. 20 C.F.R. § 404.1520(a)(4)(ii). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at Step Two but must proceed to the next step. *Id.* It follows, then, that the failure to find an additional particular impairment severe at Step Two is not reversible error as long as the ALJ finds that at least one impairment is severe. *Id.* Similarly, any alleged error by the ALJ in not considering the combined effect of all of a claimant's impairments "became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at [S]tep [T]wo and proceeded

to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (same); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same); *Faint v. Colvin*, 26 F. Supp.3d 896, 910 (E.D. Mo. 2014) ("Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process."). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (holding remand not warranted where claimant was treated fairly and failed to show that he was prejudiced); *see also Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) ("[A]ny error on the part of the ALJ was harmless because there was no indication that the ALJ would have decided differently in the absence of the error.") (citation and internal quotation marks omitted).

Here, the ALJ considered all of claimant's impairments and found claimant had three severe impairments: major joint dysfunction (bilateral knees), asthma, and obesity. (AR 16). Therefore, any error in omitting claimant's additional alleged impairments of pseudoseizures and migraines from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor. *Toye v. Astrue*, No. C11-3035-MWB, 2012 WL 1969224, at *10 (N.D. Iowa June 1, 2012). Claimant cannot show, given this record, that the ALJ would have decided the case differently had he labeled these additional impairments as severe.

Regardless, the ALJ did not err in concluding claimant's pseudoseizures and migraines were not severe. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§

404.1520(c), 416.920(c). A claimant bears the burden of establishing a severe impairment. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (stating standard of proof). "[S]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [the Eighth Circuit Court of Appeals has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby*, 500 F.3d at 707 (internal citation omitted).

Here, the ALJ noted claimant was examined for a transient ischemic attack in December 2014 and that claimant also complained of "some seizure[-]like activity." (AR 16). The ALJ also pointed out, however, that an electroencephalogram (EEG) did not reveal any evidence of a seizure disorder. (*Id.*). The ALJ acknowledged claimant's migraine diagnosis and treatment, but noted that claimant experienced relief from the headaches when treated. (*Id.*). As the Court noted above, claimant's neurological examinations were all normal. Importantly, claimant has failed to point to any medical records or opinions that would support work limitations based upon these conditions. It is ultimately claimant's burden to prove the existence of a severe impairment by providing medically acceptable evidence to support the claim. *Kirby*, 500 F.3d at 707.

Accordingly, the Court finds the ALJ did not err in failing to find claimant's pseudoseizures and migraines were severe impairments and, if the ALJ did err, the error was harmless.

### C. *The Constitutionality of the ALJ's Appointment*

Claimant argues that the ALJ was unconstitutionally appointed and that the Court should remand this case to be decided by a properly appointed ALJ. (Doc. 12, at 8-20). Claimant bases his argument on *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department

head must appoint them. *Lucia*, 138 S. Ct. at 2055. Claimant argues ALJs in the Social Security Administration are similar "Officers of the United States" and have not been properly appointed. The Commissioner argues that the Court should reject this argument because claimant did not raise it to the agency.

*Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). In *Lucia*, the Supreme Court found the appellant's challenge timely when the appellant challenged the validity of the ALJ's appointment before the SEC, and continued to pursue the challenge before the appellate court and the United States Supreme Court. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. Claimant's reliance on *Harwood v. Apfel*, 186 F.3d 1039 (8th Cir. 1999) is misplaced. *Harwood* recognizes a claimant need not exhaust issues before the Appeals Council in order to raise them on judicial review, but did not address whether the issue had to be raised before the ALJ. *Id.* at 1042. *Lucia* makes it clear that this particular issue must be raised at the administrative level.

Because claimant did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, the Court finds that claimant has forfeited the issue for consideration on judicial review. This conclusion is consistent with this Court's prior opinions. *See, e.g.*, *Markle v. Berryhill*, No. 18-CV-3013-CJW-MAR (N.D. Iowa Nov. 19, 2018) (finding claimant waived Appointments Clause issue by failing to raise it to the agency); *Stearns*, 2018 WL 4380984, at *6 (same); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) (same). Thus, the Court denies claimant's request for remand on this basis.

## *VI.    CONCLUSION*

For the reasons stated above, the Court **affirms** the Commissioner's decision.

**IT IS SO ORDERED** this 1st day of August, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa